Thomas C. **BERRY**, Plaintiff,

v.

**AMERICAN COMMUNITY MUTUAL INSURANCE COMPANY,** Defendant.

**No. 93–1194.**

United States District Court, C.D. Illinois, Peoria Division.

May 31, 1994.

James W. Yoder, Bloomington, IL, for plaintiff.

Gary D. Nelson, Karen L. Kendall, and James J. Manning, Heyl Royster Voelker & Allen, Peoria, IL, for defendant.

## ORDER

McDADE, District Judge.

Before the Court is a Motion for Summary Judgment filed by Defendant, American Community Mutual Insurance Company (# 5-1) ("ACMIC"), seeking a determination that Plaintiff, Thomas C. Berry ("Mr. Berry"), made a material misrepresentation on an insurance application which nullifies his policy under the Illinois Insurance Code, 215 ILCS 5/154 (1992). For the reasons set forth below, the motion is granted.

## BACKGROUND

On March 17, 1992, Thomas and Diana Berry signed an application for group health insurance with American Community Mutual Insurance Company. The ACMIC insurance application requires the applicant to disclose examinations, advice, and treatment received during the previous ten years. In response to this request for disclosure, Mark Miller, Mr. Berry's agent, acknowledged that Mr. Berry suffered from stomach problems for which he had taken several medications and sought the advice of three attending physicians: Dr. Goldberg, Dr. Hourng (sic), and Dr. Willey.

However, Mr. Berry, through his agent, failed to disclose that in April and June of 1988 he had sought the advice, examination, and treatment of Dr. Sawicki,[1] an internist, and Dr. Edward W. Pegg III, a specialist in neurology, for symptoms of pain and numbness in the left leg, left flank, and left side of his chest which he had been experiencing for five to six weeks. The results of these examinations are recorded in examination notes and by the uncontroverted deposition testimony of Dr. Pegg which follows.

In a letter to Dr. Sawicki dated April 14, 1988, Dr. Pegg reported that his examination revealed that the numbness and pain experienced by Mr. Berry on the left side of his body were consistent with hyperalgesia[2] and a lesion, noting that other symptoms associated with the onset of multiple sclerosis ("MS") such as blurred vision, were not present. The letter concluded by recommending further evaluation. On April 16, 1988, Dr. Pegg advised Mr. Berry that his resolving symptoms were consistent with the possibili-

---

1. Dr. Sawicki referred Mr. Berry to Dr. Pegg.

2. A discomfort noticed with touches to the skin that produce painful stimuli. For instance, a pinprick would tend to produce an exaggerated discomfort.

ty of MS or some type of collagen vascular process,[3] recording these statements in his notes.[4] On June 15, 1988, Mr. Berry's symptoms had completely resolved.[5] Although Dr. Pegg noted that he was suspicious of a demyelinating disorder,[6] he made no diagnosis at that time. Further observation was planned, but Mr. Berry did not keep the next two scheduled appointments and the examinations were discontinued.

On July 21, 1992, Mr. Berry again sought advice and treatment from Dr. Pegg. On that occasion, Mr. Berry presented blurred vision in the right eye. Dr. Pegg referred Mr. Berry to an ophthalmologist, Dr. Kasbeer, but concluded that Mr. Berry "was showing signs that would support the diagnosis of MS which warranted further examination."

## DISCUSSION

The Illinois Insurance Code provides that a misrepresentation made by an insured in the negotiation for a policy of insurance shall defeat or avoid the policy where the misrepresentation was made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the insurance company. 215 ILCS 5/154 (1993). A misrepresentation is defined as "a statement of something as a fact which is untrue and affects the risk taken by the insurer."[7] *Northern Life Insurance Co. v. Ippolito Real Estate Partnership*, 234 Ill.

App.3d 792, 601 N.E.2d 773, 176 Ill.Dec. 75 (1st Dist.1992).

Materiality, like probable cause, is ordinarily a question of fact reserved for the jury because its determination requires an assessment of whether "reasonably careful and intelligent persons would have regarded the facts stated as substantially increasing the chances of the events insured against, so as to cause a rejection of the application." *Northern Life Insurance Co.*, 601 N.E.2d at 779, 176 Ill.Dec. at 81. Summary Judgment is appropriate, however, "where the misrepresentation is of such a nature that there can be no dispute as to its materiality." *Commercial Life Insurance Co. v. Lone Star Insurance Co. et al.*, 727 F.Supp. 467 (N.D.Ill.1989).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact.

3. Collagen vascular disorders occur when antibodies attack other areas of the nervous system, blood vessels, or other organ systems in the body. Rheumatoid arthritis is an example.

4. In his deposition, Dr. Pegg testified that in June 1988 Mr. Berry's symptoms were not sufficient to make a diagnosis of MS and could have been occasioned by a virus such as "transverse myelitis" which also would have resolved itself without treatment.

5. According to Dr. Pegg, with MS, there are usually episodes in which the immune system will attack the spinal cord followed by resolution of the symptoms. Then, at some later date, attacks on the nervous system will recur. In fact, if a person has symptoms that "come and go," the chances of MS are greater.

6. A dymeliating disorder includes a group of illnesses, but the major one is multiple sclerosis

or MS. MS occurs when there is a stimulus which causes the immune system to act up and attack the spinal cord.

7. This definition, although the law in Illinois, begs the question of materiality. If a false statement affects the insurer's risk, then according to their respective definitions, this statement is both a misrepresentation and a material misrepresentation—making a distinction between the two irrelevant. The only possible distinction would be between a statement which was untrue but would not affect the insurer's risk and a statement that would affect risk. Since ACMIC claims that the misrepresentation in this case affected its risk, and Plaintiff does not argue that his omission was a misrepresentation which was not material, the distinction—although it may exist in some cases—is irrelevant here.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

As to genuine issue, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As stated in *Anderson*, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." When a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, a summary judgment may be granted.

Contrary to Plaintiff's assertion, no genuine issue of fact exists with respect to the question of materiality in this case, because Plaintiff has failed to meet ACMIC's affidavit on this issue.[8] The case law indicates that "[t]he materiality of a misrepresentation may be established by the underwriter's testimony." *Garde by Garde v. Country Life Insurance Co.*, 147 Ill.App.3d 1023, 498 N.E.2d 302, 101 Ill.Dec. 120 (4th Dist.1986); *Commercial Life Insurance Co.*, 727 F.Supp. at 469 (N.D.Ill.1989). The underwriter's opinion is not necessarily conclusive on the issue though and may be controverted by the applicant, thus creating a genuine issue of material fact precluding summary judgment.[9]

However, the facts asserted in an uncontroverted affidavit will be taken as true on summary judgment. ACMIC has submitted an affidavit by its underwriter stating that ACMIC would have denied insurance coverage to Mr. Berry had it known of the examination results by Dr. Pegg. This assertion has not been directly controverted by Mr. Berry; instead, he side-steps the issue, submitting affidavits by employees of Dr. Goldberg and Dr. Horng, which assert that ACMIC never requested Mr. Berry's records. Mr. Berry thus contends that even if the names of Dr. Sawicki and Dr. Pegg had been listed on the application, ACMIC would not have checked these records, thereby assuming the risk of providing coverage to him. Mr. Berry's argument suggests that the omissions were not material because ACMIC's assumed risk would have been made without the omitted information.

A similar argument was rejected in *Commercial Life Insurance Co. v. Lone Star Insurance Co.*, 727 F.Supp. 467 (N.D.Ill. 1989), and summary judgment granted in favor of the insurance company, where a district court found that the insurance company's failure to check records and undertake other underwriting precautions did not preclude it from relying on the truthfulness of the applicant's answers and assuming a risk on the basis of these answers. Judge Aspen wrote in *Lone Star* that "[t]he implicit foundation of this argument is an assumption that Lone Star had an obligation to take these measures ... [and] that assumption is incompatible with Illinois law." *Id.* at 470.

---

8. ACMIC submitted the affidavit of its underwriter stating that ACMIC would have denied insurance coverage to Mr. Berry had it known of the examination results by Dr. Pegg.

9. If it were otherwise, any omitted statement would be grounds for summary judgment in favor of the insurance company, because the case law indicates that the omitted statement does not need to be related to the injury or illness for which a claim of insurance was made and denied. *Garde by Garde v. Country Life Insurance Co.*, 147 Ill.App.3d 1023, 1031, 498 N.E.2d 302, 308, 101 Ill.Dec. 120, 126 (4th Dist.1986) (the fact that a potential insured does not die from the misrepresented ailment does not affect the materiality of the misrepresentation).

**260**

Summary Judgment was also granted in *Small v. Prudential Life Insurance Company*, 246 Ill.App.3d 893, 617 N.E.2d 80, 186 Ill.Dec. 841 (1st Dist.1993), where the defendant's underwriter testified that if the omitted medical history had been disclosed, the insurance company would not have issued the policy and the plaintiff offered no evidence to counter this testimony. *Id.*, 617 N.E.2d at 83, 186 Ill.Dec. at 844.

Although there may be a question of fact regarding whether Mr. Berry actually had MS in June of 1988, this question is not material for purposes of the legal issue in this case, namely, whether Mr. Berry made a material misrepresentation by omitting from his insurance application the names of Dr. Sawicki and Dr. Pegg and the purpose for their examinations. Although this determination is usually made by a jury applying an objective "reasonable person" test to the facts, the Court believes that the uncontroverted affidavit of ACMIC's underwriter disposes of the relevant factual question in this case, leaving the Court to conclude that if Plaintiff cannot dispute the materiality of this misrepresentation with appropriate expert testimony on summary judgment, a reasonable jury could not help but find the issue of materiality in favor of Defendant. Accordingly, summary judgment will be ordered in favor of ACMIC.

### CONCLUSION

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by Defendant, American Community Mutual Insurance Company is **GRANTED** (# 5–1). The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff. Each party is to bear their own costs. **CASE TERMINATED.**