Hebert MELOCHE, Plaintiff,

v.

CITY OF WEST BRANCH City Manager Patrick McGinnis, Sgt. City Police Rodger Williams, County of Ogemaw Building & Zoning Director James Breese, Structural Inspector Jim Valleau, Mechanical Inspector Jim Winne, and Electrical Inspector Gary Colson, Defendants.

No. 00–10272–BC.

United States District Court,
E.D. Michigan,
Northern Division.

March 2, 2001.

Herbert J. Meloche, West Branch, MI, pro se.

Jamie H. Nisidis, Braun, Kendrick, Saginaw, MI, Gregory E. Meter, Braun, Kendrick, Bay City, MI, for City of West Branch, Patrick McGinnis, Rodger Williams.

Terence J. O'Neill, O'Neill, Wallace, Saginaw, MI, for Ogemaw County, James Breese, Jim Valleau, Jim Winne, Gary Colson.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

LAWSON, District Judge.

The City of West Branch, Michigan has enacted an ordinance which empowers the City Building Inspector or his authorized designee to enter and inspect buildings within the city limits which he has cause to believe are "dangerous and unsafe." West Branch Ordinance § 150.28. City and Ogemaw County officials entered into a vacant residence owned by the plaintiff on September 29, 1999 to inspect the building after having obtained an administrative search warrant pursuant to the ordinance. Plaintiff claims that the entry violated his constitutional rights and, accordingly, he has filed a *pro se* civil action against the City and County and their respective employees based on 42 U.S.C. § 1983. The defendants have filed motions for sum-

mary judgment. The Court heard the parties' arguments in open court on February 22, 2001. Because the plaintiff has failed to come forward with evidence establishing a violation of his rights under the Constitution or laws of the United States, the Court shall grant the motions for summary judgment.

## I.

The plaintiff, Herbert James Meloche, owns a house located at 112 McGregor Court, West Branch, Michigan which he rents to tenants. He also owns property located at 217 N. Burgess Street, West Branch, Michigan. In July 1999, the plaintiff obtained a judgment against his tenants for nonpayment of rent which eventually resulted in the tenants vacating the property. In late September 1999, Rodger Williams, a police officer of the City of West Branch, observed that the house on McGregor Court was vacant and in a state of disrepair. He filed an affidavit on September 28, 1999 in support of an application for an administrative search warrant seeking authorization to enter and inspect the building. In the affidavit, Mr. Williams averred that he "observed the damage to the building including broken windows and missing or damaged facia and trim" and that "it appears that the building may be unsafe and dangerous...." Aff. of Rodger Williams.

A local magistrate judge issued an administrative search warrant on September 28, 1999 authorizing the building inspector to search the McGregor Court house for defects or dangerous conditions in the structure and mechanical systems in the building. The administrative search warrant was executed on September 29, 1999 by a team of county inspection officers led by defendant Patrick McGinnis. When they arrived, they found the door to the McGregor Court property unlocked and unsecured. They were able to enter the house without the use of force and observed "a number of broken windows on the building, a hole in the wall, and the scent of animal feces and urine and evidence of varment entry into the building. The siding and trim were also in poor condition." Aff. of Patrick McGinnis, ¶ 6.

The team of inspectors also procured a warrant for the inspection of the property at 217 N. Burgess. However, because the structure on that property was not easily accessible they only inspected the outside of the building for violations. Because they determined that the exterior conditions did not suggest imminent danger, they decided not to enter.

The inspection team posted a "Notice of Unsafe and Dangerous Conditions" on the McGregor Court property, and also sent a copy to the plaintiff, announcing a hearing date of October 13, 1999. The stated purpose of the hearing was to allow plaintiff an opportunity to present evidence showing why the building should not be demolished or otherwise made safe. A hearing was conducted with the plaintiff, City Manager Patrick McGinnis, and Hearing Officer Marilyn Beech. The plaintiff tape-recorded the hearing with the permission of all the participants, and a transcript was made part of the record in this case.

The administrative search warrant was based upon a West Branch City Ordinance which states:

> The Building Inspector, the Fire Chief and/or the Health Officer of the city, or anyone specifically deputized therefor by one of the officers, shall enter upon any land or into any building or structure for the purpose of and to inspect, and shall inspect the same, whenever he shall have cause to believe or fear that said building, structure, shed, fence or other man-made structure is a dangerous and

unsafe building or structure as defined in § 150.25.

West Branch City Ordinance § 150.28.

Section 150.25 defines "dangerous and unsafe structures" as a building in any of the following conditions:

(7) Whenever the building or structure has been so damaged by fire, wind or flood, or has become so dilapidated or deteriorated as to become an attractive nuisance to children who might play therein to their danger, or as to afford a harbor for vagrants, criminals or immoral persons, or as to enable persons to resort thereto for the purpose of committing a nuisance or unlawful or immoral act.

(8) Whenever a building or structure used or intended to be used for dwelling purposes, because of dilapidation, decay, damage or faulty construction or arrangement or otherwise, is unsanitary or unfit for human habitation or is in a condition that is likely to cause sickness or disease when so determined by the Health Officer, or is likely to work injury to the health, safety or general welfare of those living therein.

(9) Whenever any building becomes vacant, dilapidated and open at door or window, leaving the interior of the building exposed to the elements or accessible to entrance by trespassers.

West Branch City Ordinance § 150.25. Finally, West Branch City Ordinance § 150.26 provides:

All dangerous and unsafe structures within the terms of § 150.25 are hereby declared to be public nuisances and shall be repaired, altered, vacated or demolished as provided in this subchapter.

On July 27, 2000, the City of West Branch Hearing Officer sent a letter to the plaintiff stating that the McGregor Street house shall be demolished within thirty (30) days of the notice. The plaintiff filed an action in the Ogemaw County Circuit Court challenging the City's action. Thereafter, he filed the instant action in this court pursuant to 42 U.S.C.· § 1983 alleging a violation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights.

## II.

### A.

The defendants have filed motions entitled Motions for Summary Judgment, but have based their motions on both Fed. R.Civ.P. 12(c) and 56. At oral argument, the defendants agreed that it was inappropriate at this point in the proceedings to urge dismissal under Rule 12(c) and abandoned that ground for relief. Likewise, the plaintiff acknowledged that his claim for relief was based primarily upon the unlawful search of his premises and violation of his right to due process of law, and therefore his complaint implicated only the Fourth and Fourteenth Amendments, and he withdrew his claims under the Fifth and Sixth Amendments.

Also at oral argument, the plaintiff acknowledged that he has resolved his dispute with the City with respect to the demolition of the structure on McGregor Court. He stated that he is in the process of rehabilitating the house and intends to continue using it as rental property. He also acknowledged that his claim is based primarily on the entry of the premises by city and county officials which the plaintiff claims to be unlawful, and that he has no evidence that any city or county officials caused any damage to the structure or loss of its contents.

### B.

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. A party opposing a motion for summary judgment must show by affidavits, deposi-

tions, and other factual material that there is "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "materiality" of a disputed fact is determined by the substantive law of the claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir.2000). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

A party may support a motion for summary judgment by demonstrating that an opposite party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may not merely rely upon the pleadings to oppose a motion for summary judgment but must come forward with affirmative evidence in the form of materials described in Rule 56(c) to establish a genuine issue on a material fact. *Id.* at 324, 106 S.Ct. 2548. Even in complex cases, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no single genuine issue for trial period." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 598, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quote marks omitted).

The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476–81 (6th Cir. 1989). Even where the record shows a dispute with respect to certain facts, un-

less those facts are "material" to the determination of a claim or defense, summary judgment is appropriate. *Berry v. Am. Community Mut. Ins. Co.*, 855 F.Supp. 256, 259 (C.D.Ill.1994).

### III.

■ In order to establish a right to relief under 42 U.S.C. § 1983, the plaintiff must prove that the defendant (1) was acting under color of state law and (2) deprived the plaintiff of rights secured by the United States Constitution. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir.1998). The plaintiff has pleaded a violation of his right to be free from unreasonable searches and seizures under the Fourth Amendment, a right which has been made applicable to the states through the Fourteenth Amendment and therefore is actionable under § 1983. *See Zinermon v. Burch*, 494 U.S. 113, 124–25, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

The Fourth Amendment confirms "[t]he right of the people to be secure ... against unreasonable searches and seizures...." U.S. Const. amend. IV. Thus, in determining whether the plaintiff suffered a violation of a constitutional right under the Fourth Amendment, the Court must analyze whether the defendants' conduct was "reasonable" within the meaning of Fourth Amendment jurisprudence. *See Graham v. Connor*, 490 U.S. 386, 395–96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court reasserted that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Id.* at 585, 100 S.Ct. 1371. Accordingly, to "minimize [ ] the danger of needless intrusions" into the "sanctity of the home," *Id.* at 586, 601, 100 S.Ct. 1371, the Fourth Amendment requires a warrant issued by a judicial offi-

cer—"a neutral and detached magistrate." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ Administrative searches, like searches intended to discover instrumentalities, evidence or fruits of a crime, fall within the purview of the Fourth Amendment. *Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir.1996). The Supreme Court was held that administrative searches conducted without the consent of the property owner require a search warrant. *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

■ In order for an administrative search warrant to issue, there must be (1) specific evidence of an existing violation or (2) a general neutral administrative plan. *National–Standard Co. v. Adamkus*, 881 F.2d 352, 361 (7th Cir.1989). Administrative search warrants may be issued to promote inspection programs "aimed at securing city-wide compliance with minimum physical standards for private property." *Camara*, 387 U.S. at 535, 87 S.Ct. 1727. Such inspections are "reasonable" within the meaning of the Fourth Amendment, and probable cause supporting the issuance of a warrant exists when based on administrative standards for conducting an inspection of a particular building. *Id.* at 538, 87 S.Ct. 1727. Probable cause can also be based upon the specific condition of a particular building. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

Under the specific evidence prong, probable cause is required. *United States v. Acklen*, 690 F.2d 70, 72 (6th Cir.1982). However, probable cause may be based "not only on specific evidence of an existing violation but also on a showing that reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular (establishment)." *Id.* (citing *Camara*, 387

U.S. at 538, 87 S.Ct. 1727) (internal quotations omitted).

■ The Supreme Court has expressed a strong preference that searches be conducted pursuant to a warrant issued by a neutral and detached magistrate, even to the point of stating that "in a doubtful or marginal case [of probable cause] a search under a warrant may be sustainable where without one it would fall." *United States v. Ventresca*, 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In reviewing search warrants in the criminal context, the Court of Appeals has held that "an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.2000). *Accord United States v. Davidson*, 936 F.2d 856, 859 (6th Cir.1991) ("[T]he magistrate's probable cause determination should be afforded great deference by the reviewing court."). Likewise, in a § 1983 action in which the plaintiff claims a violation of the Fourth Amendment, the plaintiff bears the burden of establishing that the magistrate's probable cause determination was unreasonable in light of the deferential standard of review. *Cf. Golino v. City of New Haven*, 950 F.2d 864, 870–71 (2d Cir.1991).

In this case, the administrative search warrant was based upon Officer Williams' observation of "broken windows and missing or damaged facia and trim" which he believed made the building "unsafe and dangerous" as that term is defined under the applicable city ordinance.

At oral argument, the plaintiff's main complaint was based upon the fact that city officials did not seek plaintiff's permission before entering his property. He claimed that consent was a prerequisite to the issuance of a warrant, and cited *Camara v. Municipal Court, supra,* in support of his position. In *Camara*, however, a health inspector requested and was de-

nied permission to inspect an apartment building that the inspector believed violated the building's occupancy permit. The inspector returned a second time without a warrant and was refused permission to inspect. He issued a citation to the building owner. The building owner was notified that he was required by law to permit the inspection, and when he refused a criminal complaint was issued. Overruling earlier precedent, the Supreme Court held that absent consent an administrative search warrant was required in non-emergency situations to enter and search a building under the circumstances of that case.

■ *Camara* does not support the claim that consent is a necessary prerequisite to obtaining an administrative search warrant. Rather, the Court provides that in the absence of consent, an administrative search warrant authorizes entry and inspection, and is therefore "reasonable" under the Fourth Amendment.

■ In this case, West Branch's ordinance establishes an administrative standard, and Officer Williams' affidavit furnished specific facts which constituted probable cause for the issuance of the administrative warrant. The magistrate's determination that probable cause existed was reasonable and consistent with the Fourth Amendment.

The plaintiff also complains that a copy of the search warrant was not left on the premises at the time of the search. Although this fact is disputed by the defendants, it is not material for the purpose of a motion for summary judgment. "The Fourth Amendment does not require prior, or even contemporaneous, service of a conventional search warrant." *United States v. Martinez,* 498 F.2d 464, 468 (6th Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 654 (1974).

The plaintiff also claims that the signature of the magistrate on the warrant was forged. The plaintiff offers no evidentiary support for this claim, and the defendants have furnished an affidavit of 82nd District Court Magistrate Cynthia Hobart in which she attests that the signature on the search warrant is, in fact, hers. Therefore, there is no factual dispute on this issue presented by the record in this case.

■ Finally, the plaintiff complains that his Fourth Amendment rights were violated when the officers entered the premises at 217 N. Burgess Street. However, no entry to the building on that property was effectuated, and the city officials had procured a warrant authorizing an inspection of that building in all events. That they chose to exercise their discretion and refrain from entering the building after determining that it was secure and did not pose a hazard is evidence of their good judgment and certainly does not amount to a constitutional violation.

The Court has reviewed the submissions of the parties and concludes that the plaintiff has failed to come forward with evidence which establishes that he has been deprived of a constitutional right. The plaintiff has not offered proof sufficient to lead a rational trier of fact to find in his favor on this element.

IV.

The defendants also claim that the plaintiff has failed to prove an official policy, regulation, custom or practice sufficient to establish municipal liability under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See also Berry v. City of Detroit,* 25 F.3d 1342, 1348 (6th Cir.1994). In addition, the individual defendants claim that they enjoy qualified immunity because the undisputed evidence establishes that they reasonably could have concluded that their actions were consistent with the plaintiff's constitutional rights. *See Anderson v. Creigh-*

*ton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Because the Court has determined that the plaintiff has failed to establish a valid claim under 42 U.S.C. § 1983, these issues need not be addressed.

## V.

The plaintiff has failed to offer sufficient evidence on an essential element of his claim, and therefore the defendants must prevail on their motions as a matter of law.

Accordingly, it is **ORDERED** that the motion by defendants, City of West Branch, Rodger Williams and Patrick McGinnis, for summary judgment [dkt. # 19] is **GRANTED.**

It is further **ORDERED** that the motion by defendants, County of Ogemaw Building and Zoning Director James Briese, Structural Inspector Jim Valleau, Mechanical and Plumbing Inspector Jim Winne, and Electrical Inspector Gary Colson, for summary judgment [dkt. # 21] is **GRANTED.** It is further **ORDERED** that the plaintiff's complaint is **DISMISSED** with prejudice.