PATRICIA SMALL, Plaintiff-Appellant, v. PRUDENTIAL LIFE INSUR-
ANCE COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—92—1104

Opinion filed April 29, 1993.—Rehearing denied May 26, 1993.

John W. Flynn, of Wood Dale, for appellant.

Hubert O. Thompson and Ellen E. Douglass, both of Carney & Brothers, Ltd., of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

The plaintiff, Patricia Small, beneficiary of an insurance policy on the life of her husband, Ronald Small, sued the defendant, Prudential Life Insurance Company, for failure to indemnify her when Ronald died. The defendant filed a counterclaim for rescission, alleging misrepresentations in the policy application. After a bench trial, the court found in favor of the defendant. On appeal, the plaintiff contends that the trial court's decisions that the decedent made a misrepresentation and that the misrepresentation was material were against the manifest weight of the evidence. She also contends that the defendant did not prove that the application was attached to the policy when it was issued, as required by law, and that the court erred in admitting the application in evidence. We affirm.

The defendant issued the decedent a life insurance policy dated May 9, 1985, for $100,000. Before the policy was issued, the decedent underwent a required medical exam. On May 9, 1985, Dorothy Lang, a registered nurse employed by Vital Measurements, went to the Smalls' home and administered the exam. She also asked them questions about Mr. Small's medical history and wrote the responses on the application. This litigation is based on the responses recorded for three questions. On the application form, the "Yes" box was marked for the following question.

"7. Has the person examined ever:

\* \* \*

b. been in a hospital, sanitarium or other institution for observation, rest, diagnosis or treatment?"

The "No" box was marked for the next question.

"8. Has the person examined ever been treated by a doctor for or had any known sign of:

\* \* \*

f. nervous trouble, convulsions, epilepsy or mental disorder?"

Question 12 asks for the full details of any answer to questions 6 through 11 which was marked "yes." In response to this question, the nurse wrote that the decedent was hospitalized in 1965 for stomach ulcers. She also included the decedent's visits to doctors in 1965 and 1984.

In addition to the 1965 hospitalization, the decedent, in fact, had been hospitalized from January 2, 1983, to February 12, 1983, from March 27, 1983, to April 7, 1983, and from July 26, 1984, to August 18, 1984, for major depressive disorder. These three hospital stays were not disclosed on the application. At the bottom of the application is the statement, "I declare that, to the best of my knowledge and belief, the above statements are complete and true." Below this statement is the decedent's signature.

On November 3, 1986, Mr. Small died from cardiac arrest caused by a ruptured aneurysm. Because his death occurred within two years after the policy was issued, the defendant contested indemnity under the terms of the insurance contract. The trial court found that the decedent failed to disclose "essential facts requested in the application" and that the evidence was "overwhelming, uncontradicted and inherently persuasive that the policy would not have been issued if all the facts had been known."

The plaintiff first argues on appeal that the court's decision that the decedent made a misrepresentation was against the manifest weight of the evidence and that the defendant should be estopped from asserting misrepresentation. She cites *Good v. National Life & Accident Insurance Co.* (1976), 37 Ill. App. 3d 831, 347 N.E.2d 460, which states that when an applicant gives correct oral answers which are incorrectly recorded by the authorized agent, the insurer cannot rely on the false answers to avoid the policy. The plaintiff does not contest that the decedent was hospitalized three times for depression, but instead argues that she and the decedent told the nurse about the hospitalizations for depression

and that the nurse failed to record this information. She argues further that her testimony was uncontradicted because the nurse did not testify.

The trial court found that the plaintiff suffered a "credibility gap" on this issue. The plaintiff testified at trial that she told the nurse about the decedent's depression and the dates that he was in the hospital. But she was impeached on cross-examination with her deposition testimony. At her deposition the plaintiff was asked, "And you told [the nurse] the dates that [decedent] was at those three hospitals?" The plaintiff replied, "She didn't ask the dates." The plaintiff further testified at trial that she also told "Carol" about the decedent's depression. Carol Murphy was employed by the defendant and completed the portion of the decedent's application which did not include any medical information. Carol Murphy testified that the Smalls told her nothing about the decedent's medical history.

■ We find that the evidence supports the court's conclusion that the decedent made a misrepresentation. We are not persuaded by the plaintiff's argument that her testimony was uncontradicted because the nurse did not testify. The plaintiff's deposition contradicted her trial testimony. Also, the nurse was employed by an independent company which had no interest in whether the decedent's application for insurance was accepted or denied. We are not persuaded that the nurse would include a hospital stay which occurred 20 years before the policy was issued and ignore three hospital stays which occurred within two years of the policy's date. More importantly, the decedent swore the application contained a *complete* description of his medical history. Yet he affirmatively denied any history of mental disorder and omitted three hospitalizations for major depressive disorder. Even if the decedent did not read the application before he signed it, as the plaintiff argues, he nevertheless is bound by the document. *Harney-Morgan Chevrolet Olds Co. v. Rabin* (1983), 118 Ill. App. 3d 602, 455 N.E.2d 130 (to negligently sign an unread document does not relieve the signer of the legal consequences of its contents).

Next the plaintiff maintains that there was insufficient evidence presented at trial to establish that the misrepresentation materially affected the defendant's acceptance of the risk.

■ An insurer may refuse to pay benefits under a life insurance policy where a misrepresentation "materially affects *** the acceptance of the risk." (Ill. Rev. Stat. 1991, ch. 73, par. 766.) Materiality is determined by whether or not reasonably careful and in-

telligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application. Materiality may be established by the testimony of the insurer's underwriter. *Garde by Garde v. Country Life Insurance Co.* (1986), 147 Ill. App. 3d 1023, 498 N.E.2d 302.

■ In this case, the defendant's underwriter testified that if the omitted medical history had been disclosed, the insurance company would not have issued the policy. He based this opinion on his experience and on his review of Prudential's medical underwriting manual. The underwriter was a senior underwriting consultant and had been employed by the defendant for 22 years. The plaintiff offered no evidence to counter his testimony. We agree with the trial court's conclusion based on this evidence that reasonably careful and intelligent persons would regard the decedent's three recent hospitalizations for major depressive disorder a substantial risk to a company issuing a life insurance policy.

■ The plaintiff next contends that the defendant failed to prove the application was attached to the policy when it was issued. The application must be attached to the insurance policy for the insurer to void the policy based on a misrepresentation in the application. (Ill. Rev. Stat. 1991, ch. 73, par. 766.) The plaintiff argues that the defendant failed to offer evidence to contradict her testimony that the application was not attached when she received the policy and when she surrendered it to the defendant's claims investigator after her husband died. We disagree.

When the defendant produced the original policy pursuant to a discovery request, the application was attached to the policy. The original policy admitted in evidence at trial had the application attached to it. Although no witness testified that the application was attached to the policy, the defendant offered evidence that it was Prudential's custom and practice to attach the application to the policy. The policy states under the "General Provisions" endorsement that a copy of the application is attached to the policy. Evidence of the routine practice of a company is relevant to prove that the actions of the company on a specific occasion conformed to the routine. (*Webb v. Angell* (1987), 155 Ill. App. 3d 848, 859, 508 N.E.2d 508, 517.) When evidence is presented that the routine was not followed, the trier of fact resolves the conflict based on the evidence and the credibility of the witnesses. *Webb*, 155 Ill. App. 3d at 859, 508 N.E.2d at 517.

The trial judge decided that the plaintiff's testimony was inconclusive as to whether the application was with the policy when she

surrendered it to the defendant's claims investigator. The record reveals that the judge was present during the plaintiff's testimony, took notes, listened to a tape recording of her testimony, and played the relevant portion for the attorneys when he made his ruling. Based on the record and the evidence, we find that the trial court's decision that the application was attached to the policy was not against the manifest weight of the evidence.

■■ We reject the plaintiff's final argument that the court erred when it admitted the application in evidence. She claims the application was not properly authenticated and is hearsay. The application was properly authenticated when the plaintiff identified the decedent's signature. This sworn testimony constitutes an admission by a party opponent, or on her behalf, and was properly admitted as substantive evidence.

The decision of the trial court is affirmed.

Affirmed.

JIGANTI, P.J., and HOFFMAN, J., concur.