In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 14-1791, 14-1801

ESSEX INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

GALILEE MEDICAL CENTER S.C., D/B/A MRI LINCOLN IMAGING CENTER, *et al.,*

*Defendants-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-CV-06934 — **John W. Darrah**, *Judge.*

ARGUED FEBRUARY 10, 2016 — DECIDED MARCH 4, 2016

Before BAUER, FLAUM, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* Plaintiff Essex Insurance Company ("Essex") filed a declaratory judgment action against Galilee Medical Center S.C., doing business as MRI Lincoln Imaging Center ("Galilee"), and Luis Angarita, M.D., a physician employed by Galilee, seeking rescission of an insurance policy issued to Galilee. The district court entered summary judgment for Essex, reasoning that rescission was warranted be-

cause defendants had made material misrepresentations in their insurance policy applications. For the reasons that follow, we affirm the judgment of the district court.

## I. Background

### A. Insurance Policy

Galilee is a Delaware corporation that provides medical services in Chicago. Essex issued a professional liability insurance policy to Galilee (the "Essex Policy" or the "Policy") under which Essex was obligated to pay for claims against Galilee, the "insured," for personal injuries caused by "any act, error or omission" in Galilee's professional services. The Policy also covered claims against Galilee physicians, including Angarita, "solely while acting on behalf of [Galilee] and within the scope of his/her duties as such."

To obtain coverage, Essex required both Galilee and Angarita to fill out applications. The applications contained a notice that Essex would rely on the answers provided by the applicants when issuing the policy. Accordingly, the Essex Policy deemed all information and statements made in the applications "material to the acceptance of the risk or hazard assumed by" Essex. Coverage under the Essex Policy was conditioned on Galilee's acceptance that the applications were part of the Policy, that Essex had relied on the truth of the representations made in the applications, and that Essex had deemed the representations material to the acceptance of the risk assumed by Essex.

Galilee's application asked, "Do[] the Applicant's employees or independent contractors use drugs for weight reduction for patients?" Galilee answered in the negative. The question continued: "If yes, attach a list of drugs used and

percentage of practice devoted to weight reduction." Galilee did not identify any such drugs. Galilee also answered "no" to the question of whether its employees or independent contractors performed any experimental procedures.

Likewise, Angarita answered "no" to the following questions:

> 5. With the exception of surgery for obesity, does your practice include weight reduction or control by other [sic] than diet or exercise?
>
> 5.(b) Do you dispense any drugs?
>
> 5.(c) Do you use injections for weight control?
>
> 9.(a) Do you use experimental procedures, devices, drugs, or therapy in treatment or surgery?

### B. Medical Negligence Action

In June 2011, Rosa Ravelo, one of Angarita's former patients, sued Angarita and an affiliated Galilee corporation, Galilee Medical Center S.C., doing business as Affiliated Physicians ("Galilee Affiliated Physicians"), for medical negligence based on mesotherapy treatments recommended and administered by Angarita. Mesotherapy (also known as lipodissolve, lipozap, lipotherapy, or injection lipolysis) is a non-surgical medical treatment involving injections into subcutaneous layers of fat. According to Angarita, "mesotherapy is intended to dissolve deposits of subcutaneous fat to reduce the size of isolated portions of the body in order to provide a more desirable body shape and contour for patients. Common examples include flattening areas of cellulite and smoothing … [such as the] pouching of a woman's

stomach following birth." Mesotherapy has not been approved by the U.S. Food and Drug Administration for any purpose. Angarita admitted to providing mesotherapy treatment to more than 5,000 patients, including Ravelo.

Ravelo's first appointment with Angarita occurred on November 8, 2008, at Galilee Affiliated Physicians. During the appointment, Angarita recommended that Ravelo undergo mesotherapy treatment. Ravelo agreed, and from November 15, 2008 to July 30, 2009, Angarita treated her with mesotherapy at his home office in Riverside, Illinois. In June 2011, Ravelo sued Galilee Affiliated Physicians and Angarita for medical negligence, alleging that as a result of the mesotherapy, she developed painful, infected, blister-like granulomas on her body. That lawsuit is currently stayed pending the disposition of this litigation.

### C. Procedural Background

In September 2011, Galilee sought insurance coverage under the Essex Policy for Ravelo's lawsuit. Essex denied coverage and then filed a declaratory judgment action against defendants seeking rescission of the Policy. Essex argued that rescission was warranted because defendants made the following material misrepresentations in their insurance policy applications: (1) Galilee's answer of "no" when asked whether its employees use drugs for weight reduction; (2) Angarita's answer of "no" when asked if his practice includes weight reduction by methods other than diet or exercise and if he "dispenses drugs or injections" for weight control; (3) Galilee's answer of "no" when asked whether its employees use experimental procedures; and (4) Angarita's answer of "no" when asked whether he uses experimental procedures, drugs, or therapies. In the alterna-

tive, Essex sought a declaration that it was not obligated to defend or indemnify defendants. In response, defendants filed motions for judgment on the pleadings seeking a declaration that Essex had a duty to defend the lawsuit.

Essex filed a motion for summary judgment on March 22, 2013, and the district court granted the motion, holding that rescission was warranted because of defendants' material misrepresentations. Accordingly, the district court denied as moot Essex's alternative argument for declaratory relief, as well as defendants' motions for judgment on the pleadings. The district court also denied defendants' ensuing motion for reconsideration. This appeal followed.

## II. Discussion

Defendants[1] argue that the district court erred in holding that they made material misrepresentations in their insurance policy applications.[2] We review de novo a district court's grant of summary judgment, as well as its denial of a motion for judgment on the pleadings. *Illinois Conf. of Teamsters & Emp'rs Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1364 (7th Cir. 1995); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The parties agree that Illinois law, and specifically § 154 of the Illinois Insurance Code, governs this suit. Section

---

[1] Although defendants filed separate briefs, Angarita adopted Galilee's arguments, and thus, we characterize Galilee's arguments as "defendants' arguments."

[2] Defendants also argue that they are entitled to a declaration that Essex is obligated to defend them. Because we agree with the district court's conclusion that rescission of the insurance policy is warranted, we need not address the merits of this argument.

154 allows insurers to deny coverage and rescind a policy if (1) a statement in the policy application is false and (2) the false statement either was made with the intent to deceive the insurer or materially affects the acceptance of the risk assumed by the insurer. *Illinois State Bar Ass'n Mut. Ins. Co. v. Law Office of Tuzzolino & Terpinas*, 27 N.E.3d 67, 71 (Ill. 2015).

Defendants first contend that the district court erred in concluding that defendants made material misrepresentations in their insurance policy applications about their "use" of drugs for weight control or reduction. Defendants argue that "use" includes only the act of administering mesotherapy. Under that narrow definition, Galilee (through Angarita) could not have "used" mesotherapy because Angarita administered the injections at his home office, and only *recommended* mesotherapy while working at Galilee. In the alternative, defendants argue that "use" is ambiguous, and that the ambiguity should be construed in defendants' favor.

Illinois courts construe terms in an insurance application in accordance with their plain meaning and from the standpoint of an ordinary, reasonable person.[3] *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005). Applying that standard, we agree with the district court that the term

---

[3] Defendants contend that the district court erred in construing the insurance policy application under a reasonable person standard. But defendants did not object to the use of that standard before the district court—in fact, Galilee argued that the insurance policy should be construed "with reference to … [the] average, ordinary, normal reasonable person." "A party may not 'invite' error and then argue on appeal that the error for which he was responsible entitles him to relief." *United States v. Johnson,* 26 F.3d 669, 677 (7th Cir. 1994). Therefore, we need not address this argument.

"use" is not ambiguous, nor should it be interpreted narrow-
ly to encompass only the act of administering mesotherapy.
Any reasonable applicant would have understood that by
asking several questions about the use of experimental drugs
and weight reduction procedures, Essex wanted to know
whether Galilee doctors were recommending and adminis-
tering such procedures. But defendants did not disclose this
information, and thus, Essex was not able to correctly price
the insurance policy based on the risk it was undertaking.
We will not permit defendants, who did not pay for cover-
age for suits arising out of weight loss procedures, to cir-
cumvent their duty to make truthful representations to their
insurer by reading ambiguity into a clear insurance policy
application.

The fact that Angarita made his recommendation at his
Galilee office, and then administered the treatment in his
home office, does not change this analysis. Angarita admits
that he recommended mesotherapy to Ravelo, a Galilee pa-
tient, while working at Galilee, and that he followed up on
his recommendation by administering the treatment. Per-
haps this would be a different case if Angarita had referred
Ravelo to another provider for treatment, or made a recom-
mendation that Ravelo ignored. But here, a reasonable per-
son would not find a meaningful distinction between the
recommendation and the treatment. There is no evidence
that Angarita informed Ravelo that he was administering
mesotherapy in his individual capacity, and Ravelo likely
relied on Angarita's employment at Galilee, a reputable
medical center, when she took him up on his offer. It is also
irrelevant that Galilee may have been unaware that Angarita
was recommending and administering mesotherapy to his
patients—under § 154, "a misrepresentation, even if inno-

cently made, can serve as the basis to void a policy." *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1015 (Ill. 2003).

Defendants next contend that the district court improperly equated "size reduction," which is supposedly the goal of mesotherapy, with "weight reduction." Defendants did not raise this argument until after Ravelo amended her complaint. Initially, Ravelo had alleged that Angarita recommended mesotherapy for "weight loss." After Essex filed its declaratory judgment action against defendants, Ravelo amended her complaint to substitute "size reduction" for "weight loss," despite the fact that Galilee Affiliated Physicians and Angarita never objected to her use of the term "weight loss." Around the same time, defendants amended their motions for judgment on the pleadings and opposition briefs, arguing for the first time that mesotherapy is used for "size reduction," and not "weight reduction." More specifically, defendants contended that mesotherapy is a body shaping procedure that is used to reduce fat in isolated parts of the body, not to reduce a patient's overall weight.

The district court rejected this argument, describing the distinction between weight reduction and size reduction as "disingenuous at best." We agree. Defendants fail to convince us that there is a meaningful difference between "weight reduction" and "size reduction" that would excuse the negative and incomplete answers on their insurance policy applications. Any reasonable person would have understood from the insurance policy application questions that Essex wanted to know whether Galilee doctors performed non-traditional weight loss procedures. Experimental procedures used to eliminate fat in certain parts of the body, such as mesotherapy, certainly fall within that category.

Finally, we agree with the district court that defendants' misrepresentations were sufficiently material to warrant rescission. To determine materiality, Illinois courts use an objective test that asks whether a "reasonably careful and intelligent" underwriter "would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application." *Small v. Prudential Life Ins. Co.*, 617 N.E.2d 80, 83 (Ill. App. Ct. 1993). Testimony from an insurer's underwriter may be used to establish the materiality of omitted information. *Id.* Accordingly, Essex submitted an affidavit from the managing director of Essex's underwriter stating that if Galilee and Angarita had answered "yes" to the disputed questions, Essex would not have issued the policy or would have issued it for a much higher premium. That conclusion is consistent with the insurance policy application, which asked several questions about non-traditional and experimental weight loss procedures, and with the Policy itself, which noted that all statements made in the application were material to the acceptance of the risk assumed by Essex.

Although defendants argue that summary judgment is warranted only if the insurer can show that truthful statements by the insured would have caused the insurer to reject the application entirely, defendants' interpretation of the materiality inquiry is too limited. Under § 154, a misrepresentation is material if it "affects either the acceptance of the risk or the hazard assumed" by the insurer. Here, the misrepresentations involving the scope of Angarita's medical practice significantly increased Galilee's exposure, and thus, Essex's risk. Because Angarita's use of mesotherapy led directly to Essex's exposure in the Ravelo suit, "it borders on the surreal to think that the nondisclosure was immaterial."

*TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 637 (7th Cir. 2003). Accordingly, the district court did not err in holding that Essex was entitled to rescission of the Essex Policy.

AFFIRMED.