In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2956

TIMOTHY O'BRIEN, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CATERPILLAR INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 14-cv-7229 — **Sharon Johnson Coleman**, *Judge.*

ARGUED MARCH 28, 2018 — DECIDED AUGUST 20, 2018

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. For more than half a century, Caterpillar Inc. paid unemployment benefits to laid-off employees at its manufacturing plant in Joliet, Illinois. This arrangement lasted until Caterpillar and the local union agreed to end the program in their 2012 collective-bargaining agreement. In exchange for the elimination of the benefits, Caterpillar distributed $7.8 million to certain employees who had participated in the plan. Retirement-eligible employees

received a pro rata share if they agreed to retire. Those who were ineligible to retire received the same pro rata share of the fund but with no strings attached.

Timothy O'Brien and 47 other retirement-eligible employees who refused to retire brought this lawsuit, alleging that the liquidation plan violates the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.* The district judge entered summary judgment for Caterpillar, and we affirm. Though the liquidation plan has a disparate impact on older workers, it was justified by several "reasonable factors other than age." *Id.* § 623(f)(1). The plan achieved one of Caterpillar's long-standing financial objectives—namely, the elimination of costly unemployment benefits. It also saved money by incentivizing early retirement and reducing administrative expenses, and contributed to labor peace between Caterpillar and the union.

## I. Background

Caterpillar, a Delaware Corporation headquartered in Peoria, Illinois, operates a manufacturing plant in nearby Joliet. Employees at the Joliet plant are represented in collective bargaining by a local lodge of the International Association of Machinists and Aerospace Workers. Since the 1950s, Caterpillar and the union have agreed to a series of collective-bargaining agreements. Every agreement has included a pension plan and, until 2012, a supplemental unemployment benefit plan ("unemployment plan"). Under the unemployment plan, Caterpillar made monthly contributions into a trust based on the number of hours employees worked and paid benefits out of that fund to laid-off workers.

As early as 1999, Caterpillar made the elimination of the unemployment plan an important financial objective in collective bargaining. Because layoffs—and therefore, payouts—were infrequent, Caterpillar believed that the tied-up capital could be put to better use. Caterpillar also sought to reduce expenses related to the administration of the plan. In particular, the plan's administration system was outdated and would soon require a costly investment. The union resisted full elimination of the unemployment plan but made an important concession in the 1999 agreement: newly hired employees could no longer participate in the unemployment plan.

Six years later Caterpillar extracted other concessions from the union. The 2005 agreement created a two-tiered compensation scale with all subsequently hired workers in the lower tier. Moving forward, new hires earned approximately $18 less per hour in wages and benefits compared with previously hired employees.

During the 2012 agreement negotiations, Caterpillar's first proposed labor contract eliminated the unemployment plan. As part of its proposal, Caterpillar offered to liquidate the unemployment plan's trust fund—which had grown to $7.8 million—in pro rata shares to unemployment-plan participants who were eligible to retire under the pension plan and agreed to retire. Caterpillar's proposal would therefore accomplish two goals: first, it would incentivize union members to eliminate the unemployment plan, and second, it would incentivize retirements, which would allow Caterpillar to hire replacements subject to the reduced compensation package created in the 2005 agreement.

On April 18, 2012, the union formally rejected Caterpillar's proposal. O'Brien, who served on the union's bargaining

committee, commented that the proposal "short changed" the unemployment-plan participants who were not eligible to retire. Caterpillar quickly proposed a new labor contract but did not address the union's concerns about how the trust would be liquidated. The union rejected the new proposal and stated that it would not eliminate the unemployment plan.

On April 24 Caterpillar presented a modified proposal that altered how the trust would be liquidated. The modified proposal distributed the funds in equal shares to (1) unemployment-plan participants who were eligible to retire and agreed to retire; and (2) unemployment-plan participants who were not eligible to retire. Caterpillar's negotiators hoped that this change would broaden the appeal of the proposal. The union rejected the modified proposal, however, and reiterated in "very strong language" that it would not agree to eliminate the unemployment plan.

The collective-bargaining agreement expired on May 1, and the union went on strike. A three-month standoff ensued, during which the parties met with a federal mediator three times. The union blinked first: on June 27 it proposed an overall labor contract that eliminated the unemployment plan and liquidated the funds in accordance with the modified proposal. On August 14 the union and Caterpillar agreed to a tentative agreement that included this concession. The Joliet bargaining unit subsequently ratified the agreement. At that time there were 269 employees who participated in the unemployment plan. Of those, 184 were eligible to retire, and 136 opted to retire to collect a share of the fund. Caterpillar ultimately issued a pro rata share of $37,836.51 to each employee entitled to a distribution.

The plaintiffs are the 48 retirement-eligible employees who opted not to retire and as a result did not receive a distribution. Their lawsuit alleges that Caterpillar's liquidation of the trust had a disparate impact on older workers and accordingly violated the ADEA. In support of their claim, the plaintiffs presented an expert report by Whitman Soule, who analyzed the ages and retirement eligibility of the unemployment-plan participants. Soule took two approaches in his analysis. First, he compared the ages of retirement-eligible and nonretirement-eligible participants. On average the retirement-eligible employees were 61.57 years old, and nonretirement-eligible employees were 47.81 years old. Second, Soule performed a "tabular analysis" comparing the percentage of employees eligible for retirement at each age. He concluded that "the retirement eligible employees are substantially and significantly older than the employees who were not eligible for retirement."

Caterpillar retained Dr. Jonathan Guryan to review Soule's expert report. Dr. Guryan opined that Soule's report is "wholly unnecessary as the relationship between age and retirement eligibility is definitional: it is defined in paragraphs (a) and (b) of subsection 4.1 of the Supplemental Agreement Relating to [the] Non-Contributory Pension Plan dated August 17, 2012." The plan provides that participating employees become retirement eligible by meeting one of the following criteria:

> (a) the employee reached age 65 with 5 or more years of credited service, including at least one hour of credited service on or after December 1, 1989;

(b) the employee reached age 60 with 10 or more years of credited service;

(c) the employee reached age 55 and his/her age plus years of credited service totaled at least 85; or

(d) the employee at any age accumulated 30 or more years of credited service.

Three of these factors depend explicitly on age and the fourth depends on years of service, which is correlated with age.

Caterpillar moved for summary judgment, and the judge granted the motion. She held that the plaintiffs could not make out a prima facie case of age discrimination because (1) the unemployment-plan liquidation was a one-time decision that did not constitute a practice or policy and (2) the liquidation treated workers differently based on retirement eligibility, not age. In the alternative she held that any disparate impact on older workers was based on a reasonable factor other than age under § 623(f)(1). In particular, she noted that Caterpillar saved money and created a retirement incentive so that it could hire cheaper labor.

## II. Discussion

We review a summary judgment de novo, construing the evidence and drawing inferences in the plaintiffs' favor. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017). We may affirm on any ground supported in the record so long as it was adequately addressed below and the plaintiffs had an opportunity to contest the issue. *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 222 (7th Cir. 2017).

The Supreme Court has held that the ADEA encompasses disparate-impact liability. *Smith v. City of Jackson*, 544 U.S. 228, 243 (2005) (interpreting 29 U.S.C. § 623(a)(2)). Section 623(a)(2) makes it unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." Unlike claims of disparate treatment, a disparate-impact claim does not require proof of discriminatory intent.

To state a prima facie disparate-impact claim, the plaintiffs must (1) identify a specific employment practice and (2) offer statistical evidence demonstrating that the identified practice caused a significant age-based disparity. *Smith*, 544 U.S. at 241. If the plaintiffs establish a prima facie case, Caterpillar may affirmatively defend by showing that the identified practice or policy is based on a reasonable factor other than age. *See* § 623(f)(1).

## A. Specific Employment Practice or Policy

The plaintiffs must "isolat[e] and identify[] the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Smith*, 544 U.S. at 241 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)). This requirement safeguards employers against liability "for the myriad of innocent causes that may lead to statistical imbalances." *Id.* (internal quotation marks omitted).

Caterpillar asserts that the cumulative effect of an "assortment of documents" does not constitute a single policy and that any age disparity is attributable to the definitions for retirement eligibility and for participation in the

unemployment plan. Both definitions predated the liquidation plan and neither depends solely on age. In support of this argument, Caterpillar cites the Supreme Court's decisions in *Smith v. City of Jackson* and *Wards Cove Packing Co. v. Atonio*, but both cases are easily distinguishable.

In *Smith* a city overhauled its police pay scale to match that of surrounding localities. The plaintiffs showed that the pay plan was "relatively less generous to older workers" but failed to identify any "test, requirement or practice" that caused the disparate impact. 544 U.S. at 241. *Wards Cove* presented a different problem. There the plaintiffs identified several employment practices—nepotism, a lack of objective hiring criteria, separate hiring channels, and rehire preferences—that possibly contributed to a disparate racial impact in violation of Title VII. 490 U.S. at 647–48. Their speculation as to possible causes was not enough; they failed to "specifically show[] that each challenged practice [had] a significantly disparate impact on employment opportunities." *Id.* at 657. Here the plaintiffs have specifically identified a cause for the disparate impact: Caterpillar's decision to condition benefits on retirement eligibility, a status strongly correlated with age. No more is required.

Caterpillar also contends that the liquidation plan is a "one-off event" that does not constitute an actionable practice or policy. *See, e.g.*, *Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2523 (2015) (A "one-time decision" to construct a new building in one location "may not be a policy at all."). In the employment context, we have recognized that a single, isolated decision to hire or fire an employee may not amount to a policy in the absence of other evidence. *See Bennett v. Roberts*, 295 F.3d 687, 698 (7th

Cir. 2002) (holding that an employer's rejection of an individual job applicant is not a policy); *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1156–57 (7th Cir. 1997) (holding that the elimination of a single employee's part-time position is not a policy). In contrast, a policy likely exists where employees "can show significant disparities stemming from a single decision." *Council 31, AFSCME v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992). Though the liquidation plan is a single event, it applies the same rules to hundreds of employees and causes significant age-based disparities between workers. It is an actionable policy.

## B. Evidence of Disparate Impact

Caterpillar also argues that the plaintiffs have failed to demonstrate that the liquidation plan has an age-related disparate impact. A disparate-impact claim involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (quotation marks omitted). The plaintiffs must demonstrate a "significant" age-based disparity to establish a prima facie case. *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017).

Under the pension plan, retirement eligibility depends on a combination of age and a factor correlated with age (credited service). By definition, therefore, the terms of the liquidation plan have a disparate impact on older workers. This is borne out by the statistics: the mean age of the retirement-eligible employees is 61.57 compared with a mean age of 47.81 for those ineligible to retire. The liquidation plan has an especially severe impact on employees aged 55 and older. Only 1.4% of employees under the age of 55 were eligible for

retirement compared with 93.4% of those 55 and older. In light of the substantial statistical disparities between the ages of retirement-eligible and nonretirement-eligible employees, the plaintiffs have established a prima facie disparate-impact case.

Caterpillar responds that the disparate-impact analysis is not so simple, and that the ADEA does not extend to "subgroup" claims and thus the relevant statistical comparison should be between employees 40 years and older and employees under 40. Caterpillar also argues that retirement-eligible employees are not similarly situated to those who are not eligible to retire. Finally, Caterpillar asserts that the plaintiffs cannot maintain an ADEA claim where the disparate impact resulted from "the valid criterion of retirement eligibility." These arguments are flawed for reasons we discuss below.

**1.** *Subgroup Claims*

To prove a disparate-impact claim, the plaintiffs must show that Caterpillar's liquidation plan has a disparate impact on them "because of" their membership in a protected group. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988) (discussing a Title VII disparate-impact claim). Under the ADEA, the protected group includes "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Caterpillar makes a perfunctory argument that the proper statistical comparison is between those who are in the statutorily protected group (i.e., employees 40 years and older) and those who are not.

*O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), forecloses this argument. In *O'Connor* a 56-year-old employee brought a disparate-treatment claim when he was

replaced by a 40-year-old. *Id.* at 309–10. The Court found his claim cognizable, reasoning that the ADEA's

> language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant[] so long as he has lost out *because of his age*.

*Id.* at 312. The disparate-treatment and disparate-impact provisions are identically phrased with each requiring discrimination "because of such individual's age." *See* 29 U.S.C. § 623(a)(1) (disparate treatment); *id.* § 623(a)(2) (disparate impact). The Court's reasoning therefore applies with equal force to disparate-impact claims. *See Karlo,* 849 F.3d at 71 (reaching the same conclusion).

### 2. *Relevant Statistical Comparison*

Caterpillar next argues that statistical comparisons between dissimilar groups cannot support a prima facie disparate-impact claim. For support Caterpillar cites *Wards Cove* where the Court rejected a comparison between the racial composition of a fish company's skilled workers—including accountants, doctors, and engineers—and its unskilled cannery laborers. 490 U.S. at 651–52. The Court called the comparison "nonsensical" given the differently constituted labor pools. *Id.* at 615. Caterpillar asserts that this case is analogous: only retirement-eligible workers are susceptible to retirement

incentives, so it wouldn't make sense to compare them to employees who are ineligible to retire.

But Caterpillar overlooks stark differences between this case and *Wards Cove*. There are no inherent differences between the unemployment-plan participants who were eligible to retire and those who were not. They occupied the same factory jobs, were subject to the same compensation plan, and were entitled to the same benefits. Caterpillar simply offered a worse deal to a similarly situated group of employees.

### 3. *The Court's Pension Cases*

Caterpillar asserts that the Supreme Court has expressly approved of classifications based on pension status. For support it cites two ADEA disparate-treatment cases. *See Hazen Paper*, 507 U.S. at 611 (holding that an employer permissibly terminated a 62-year-old to avoid paying pension benefits that would have vested six months later); *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 143 (2008) (holding that disability benefits that turned on pension eligibility were permissible). Caterpillar explains that an action based purely on pension status is not taken "because of such individual's age," so liability exists only where "pension status serve[s] as a proxy for age." *Ky. Ret. Sys.*, 554 U.S. at 142 (internal quotation marks omitted).

But these disparate-treatment cases shed no light on the scope of disparate-impact liability. The plaintiff in a disparate-treatment case must prove that age "*actually motivated* the employer's decision." *Id.* at 141 (quotation marks omitted). Because age and pension status are "analytically distinct," an employer may "take account of one while ignoring the other." *Hazen Paper*, 507 U.S. at 611. In contrast, a disparate-impact

claim necessarily involves a policy—e.g., conditioning benefits on pension status—that is motivated by a factor other than age. As the Court explained in *Meacham v. Knolls Atomic Power Laboratory*:

> The [reasonable factor other than age] defense in a disparate-impact case … is not focused on the asserted fact that a non-age factor was at work; we assume it was. The focus of the defense is that the factor relied upon was a "reasonable" one for the employer to be using.

554 U.S. 84, 96 (2008). We therefore turn to Caterpillar's affirmative defense.[1]

## C.  Reasonable Factor Other Than Age

The plaintiffs have established a prima facie case, but Caterpillar raises an affirmative defense that its liquidation plan is based on a reasonable factor other than age. To prevail Caterpillar must show that its less favorable treatment of retirement-eligible employees was "reasonably designed to further or achieve a legitimate business purpose and administered in a way that reasonably achieves that purpose in light of the particular facts and circumstances that were known, or should have been known, to the employer." 29 C.F.R. §

---

[1] We note for completeness that the ADEA does contain certain pension-related exceptions. *See, e.g.*, 29 U.S.C. § 623(l)(1)(A)(i) (allowing pension eligibility to turn on age); *id.* § 623(l)(2)(A) (allowing an employer to consider age-related pension benefits in determining the level of severance pay); *id.* § 623(l)(3) (allowing an employer to consider age-related pension benefits in determining the level of long-term disability benefits); *see also Teufel v. N. Tr. Co.*, 887 F.3d 799, 802 (7th Cir. 2018) (explaining the relationship between the ADEA and pension plans). Caterpillar did not invoke any of these provisions.

1625.7(e)(1). This is a "relatively light burden." *Karlo*, 849 F.3d at 80. "Unlike the [Title VII] business necessity test, which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry includes no such requirement." *Smith*, 544 U.S. at 243.

Caterpillar has satisfied its burden. The liquidation plan was justified by a reasonable factor other than age—several, actually. For over a decade, Caterpillar tried to eliminate the unemployment plan to reduce labor costs at the Joliet plant. Unemployment payments were infrequent, so Caterpillar thought it could use the funds more efficiently. Caterpillar also hoped to avoid the expense of upgrading the unemployment plan's outdated administration system. Recognizing that the union had resisted its prior attempts to eliminate the plan, Caterpillar offered to distribute the trust's $7.8 million to union members to secure their support. Caterpillar's proposal was reasonably designed to achieve these cost-cutting measures. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 392, 406 (6th Cir. 2008) (holding that the termination of "employees based on seniority to facilitate the hiring of new, less costly employees" qualified as a reasonable factor other than age).

Caterpillar's decision to offer an inferior deal to retirement-eligible employees is also valid. Voluntary retirement incentives are permissible under the ADEA, *see Henn v. Nat'l Geographic Soc'y*, 819 F.2d 824, 826–28 (7th Cir. 1987), and in conducting the reasonableness inquiry, we do not consider "whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class," *Smith*, 544 U.S. at 243. Caterpillar's proposal killed two

birds with one stone: it maintained the retirement incentives and induced union members to sign off on the deal.

The plaintiffs counter that Caterpillar's use of retirement eligibility was unreasonable for four reasons. First, they argue that we should not consider Caterpillar's rationale for eliminating the unemployment plan. In their view we should consider only whether it was reasonable for Caterpillar to modify its proposal in a manner that discriminated against retirement-eligible employees. *See Romero v. Allstate Ins. Co.*, 251 F. Supp. 3d 867, 886–87 (E.D. Pa. 2017). But we are required to consider the "particular facts and circumstances surrounding" Caterpillar's proposal, 29 C.F.R. § 1625.7(e)(1), which include Caterpillar's long-standing desire to get rid of the unemployment plan, its initial offer to distribute the funds only to retirement-eligible employees, and its subsequent offer to broaden the pool of beneficiaries. Moreover, Caterpillar's decision to treat retirement-eligible employees less favorably allowed it to secure the union's approval while keeping the retirement incentives in place.

Second, the plaintiffs argue that a desire to placate a union in collective bargaining is an inherently suspect basis to favor younger employees. They suggest that this rationale could serve as a basis for discriminating against older employees in collective bargaining. Such fears are overblown. If an employer seeks to discriminate on the basis of age, a plaintiff may bring a disparate-treatment claim under § 623(a)(1). Further, when an employer enters into an agreement that has a disparate impact on older employees, the employer has the burden to prove that the disparate impact resulted from a reasonable factor other than age. Here Caterpillar needed the union's agreement to achieve a legitimate business purpose. To

the extent that the liquidation plan was reasonably designed to further that objective, it is protected by the affirmative defense.

Third, the plaintiffs argue that a jury could find that the modified liquidation proposal was not "reasonably designed" or "administered" to secure a contract with the union. *Id.* The thrust of their argument is that the union would have readily agreed to eliminate the unemployment plan if the funds were distributed equally to all participants. But the reasonableness inquiry does not include a requirement that Caterpillar could have achieved its goals in a nondiscriminatory manner. *Smith*, 544 U.S. at 243.

Along the same lines, the plaintiffs assert that Caterpillar's decision to modify the proposal made securing an agreement with the union more difficult. They argue that the modified proposal "introduced new objectionable elements" by discriminating against retirement-eligible workers. The union's actions during the negotiations contradict this account. When it first proposed to eliminate the unemployment plan, it included the modified liquidation plan in its contract proposal—not the original liquidation plan that Caterpillar had favored.

Finally, the plaintiffs argue that acquiescence by a union in a civil-rights violation is not a defense for employers. *See e.g.*, *EEOC v. Calumet County*, 686 F.2d 1249, 1257 (7th Cir. 1982). This argument is a nonstarter. Caterpillar's defense does not turn on whether the union's agreement insulates it from ADEA liability.

In sum, we hold that the plaintiffs have established a prima facie case of disparate-impact age discrimination: the

liquidation plan constitutes a specific policy and creates a substantial age-based disparity between workers. But because the policy was based on several reasonable factors other than age, Caterpillar has established its affirmative defense to disparate-impact liability.

AFFIRMED.